## Case No. 3,839.

### DE VILLEMONT et al. v. UNITED STATES. et al.

[Hempst. 389.][1]

District Court, D. Arkansas. Oct., 1848.

SPANISH LAND GRANTS—VALIDITY—CONDITIONS— SURVEYS.

1. Where precise locality is not given to a concession, a survey is necessary to sever the land from the royal domain.

2. Surveys were necessary under the Spanish government. Case of Winter v. U. S. [Case No. 17,895] cited and approved.

[Followed in Glenn v. U. S., Case No. 5,481.]

3. In 1795, Baron de Carondelet, the governor-general of Louisiana, made a grant of land on the Mississippi river, upon condition that a road and clearing should be made within one year, and an establishment made on the land within three years; neither of which was complied with, nor was possession taken under the grant until after the cession of the country to the United States. The excuses for these omissions, namely, that the grantee was command-ant at the post of Arkansas, and that the Indians were hostile, are insufficient; as he must have known these conditions when he obtained the grant. According to the principles established in Glenn v. U. S., 13 How. [54 U. S.] 250, the Spanish authorities would not have confirmed this grant; neither can this court do it. The grant is void, because the land cannot be located by a survey.

[Followed in Glenn v. U. S., Case No. 5,481.]

Petition for the confirmation of a Spanish land claim [filed by Catharine De Villemont, Carlos De Villemont, Ursine De Villemont, Pedro De Villemont, James Blaine and Yoe, his wife, Don Carlos Gibson, Cecilia Gibson, Adelia Gibson, Louis De Villemont, Pierre Soule and Armantine, his wife, Louis T. Caine and Adele, his wife, Armand Mercier, Alfred Mercier, Dider Preux and Leontine, his wife, Auguste Mercier and Charles Jessier, heirs and legal representatives of Don Carlos De Villemont, deceased, against the United States, Horace F. Walworth, Mary B. Miles, and James B. Miles.]

Before JOHNSON, District Judge, under the act of congress of June 17, 1844 (5 Stat. 676), reviving act of May 26, 1824 (4 Stat. 52).

A. Fowler, for petitioners.

S. H. Hempstead, Dist. Atty., for the United States.

Albert Pike and D. J. Baldwin, for Horace F. Walworth.

Daniel Ringo and F. W. Trapnall, for Mary B. Miles and James B. Miles.

OPINION OF THE COURT. The claim of the petitioners, as heirs and legal representatives of Don Carlos De Villemont, civil and military commandant of the post of Arkansas and its districts, is based on the request or petition of De Villemont. dated the 10th May, 1795, addressed to the Baron De Carondelet, governor-general of Louisiana, to grant to him a tract of land having a front of two leagues by a depth of one league, with paral-

[1] [Reported by Samuel H. Hempstead, Esq.]

lel boundaries, situated in the place called the "Island del Chicot," distant twenty-five leagues below the mouth of the Arkansas river; the Cypress swamp of the Island del Chicot to be the upper boundary of the tract of land solicited. Upon which request, the Baron De Carondelet made a concession or order of survey, of which the following is a substantial translation, namely: "The surveyor-general of this province, or the private person appointed for that purpose, will locate and establish this tract of land which is petitioned for, upon the two leagues of land in front by one in depth in the place indicated in the preceding memorial; the said land being vacant, and the said location not operating to any one's prejudice; under the express conditions that a road and regular clearing be made in the peremptory space of one year; and this concession to become null at the precise expiration of three years' time, if the said land shall not be settled upon, and during which time it cannot be alienated; under which conditions a complete survey of the land must be made, which must be remitted to me, in order that a corresponding formal title may be supplied to the party interested. El Baron De Carondelet." The tract of land is to be situated twenty-five leagues below the mouth of the Arkansas river, and the Cypress swamp of the Island of Chicot is to be its upper boundary. There is no proof in the case as to the existence of the "Island del Chicot;" but there is evidence proving the existence of a place on the Mississippi river known and called by the name of "Point Chicot," and it may be admitted that this is the place called for in the request and order or warrant of survey. But the petitioners have wholly failed to show by testimony that there existed a Cypress swamp above the place called Island of, or Point, Chicot, which was to constitute the upper boundary of the tract of land intended to be granted. In the absence of this proof, it is manifest that no precise locality is given to the tract of land claimed by the petitioners. To give identity and locality to the tract of land intended to be granted, it is evident that an actual official survey, made by the surveyor-general of the province, one of his deputies, or a private person appointed for that purpose, was essential. This, however, was never done. The tract of land claimed by the petitioners has never been identified and severed from the royal domain, and upon this ground alone the claim is null and void. For the reasons upon which this opinion is founded, I refer to the decision at the present term in the case of Winter v. U. S. [Case No. 17,895], and the authorities there cited. The petition must be dismissed, and the petitioners pay all costs. Decreed accordingly.

NOTE. From this decree the petitioners appealed to the supreme court, where, at the December term, 1851, the case was argued by Mr. Taylor for the appellants, and Mr. Lawrence and Mr. Crittenden, attorney-general, for the United States, and Mr. Pike for Horace F. Walworth. It is reported in 13 How. [54 U. S.] 261; and there was delivered the following opinion of the supreme court:

CATRON, J. The heirs of Don Carlos De Villemont filed their petition in the district court of Arkansas to have a confirmation of a grant for two leagues of land front by one league in depth, lying on the right descending bank of the Mississippi at a place called the Island del Chicot, distant twenty-five leagues below the mouth of the Arkansas river; the Cypress swamp of the island being called for as the upper boundary of said tract. The governor-general granted the land on the express conditions "that a road and regular clearing be made in the peremptory space of one year; and this concession to be null, if, at the expiration of three years' time, the said land shall not be established, and during which time it cannot be alienated; under which conditions the plot and certificate of survey shall be made out and remitted to me, in order to provide the interested party with the corresponding title in form." The concession was made June 17, 1795. No possession was taken of the land by De Villemont, nor any survey made or demanded, during the existence of the Spanish government. The petition alleges that possession was first taken in 1807, and as an excuse for the delay, it is stated that the grantee was commandant at the post of Arkansas up to the end of the year 1802, and confined by his official duties there: and second, that so hostile were the Indians in the neighborhood of the land that no settlement could be made on it. The proof shows that De Villemont first took possession in 1822 or 1823. The second regulation of O'Reilly of 1770 required that roads should be made and kept in repair in case of grants fronting on the Mississippi river, and that grantees should be bound within the term of three years to clear the whole front of their lands, to the depth of two arpens; and in default of fulfilling these conditions, the land claimed should revert to the king's domain; nor should proprietors alienate until after three years' possession was held, and until the conditions were entirely fulfilled. In this instance, the time was restricted to one year for making the improvements required by the regulations, and three years were allowed for making an establishment on the premises. In this case, where a front of six miles was granted, a clearing to the whole extent was of course not contemplated, yet to a reasonable extent it certainly was; but it was undoubtedly necessary that an establishment should be made within three years; such being the requirement of the concession, in concurrence with the regulations. The act of March 26, 1804 [2 Stat. 287], prohibited any subsequent entry on the land, and declared void all future acts done to the end of obtaining a perfect title, even by an actual settler, if the settlement was not made before the 20th of December, 1803. De Villemont's title must, therefore, abide by its condition when the act of 1804 was passed. For further views on this subject, we refer to our opinion expressed on Clamorgan's title, at the present term, in the case of Glenn v. U. S., 13 How. [54 U. S.] 250.

We are asked to decree a title and award a patent on the same grounds that the governor-general of Louisiana, or the intendant, would have been bound to do, had application for a perfect title been made during the existence of the Spanish colonial government. The only consideration on which such title could have been founded, was inhabitation and cultivation either by De Villemont himself, or his tenants; and having done nothing of the kind, he had no right to a title. Nor can an excuse be heard that hostility from Indians prevented a compliance with the conditions imposed, as De Villemont took his concession subject to this risk. The alleged excuse that he was commandant

of the post of Arkansas, and bound to be constantly there in the performance of his official duties, is still more idle, as he held this office when the concession was made, and knew what its duties were. The petition was dismissed by the district court because the land claimed could not be located by survey. The concession is for two leagues front by one in depth, with parallel boundaries, situated at Chicot island, the Cypress swamp on the island being the upper boundary. Chicot island is represented in the concession as being twenty-five·leagues below the mouth of the Arkansas river. The land now claimed by the petition is represented to lie five leagues below the mouth of that river, at a place known as "Chicot Point," being a peninsula included in a sudden bend. and surrounded on three sides by the Mississippi river. It is difficult to conceive that Chicot point lying in fact nearly twenty-five leagues below the mouth of the Arkansas, is the Chicot island to which the concession refers. But admitting that the point was meant (which we believe to be the fact), still no Cypress swamp .is found there to locate the upper boundary; nor is it possible to make a decree fixing any one side line, or any place of beginning for a specific tract of land. Our opinion is, that on either of the grounds stated. the petition should be dismissed, and the decree below affirmed. Ordered accordingly.